IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| AMANDA J. TACZAK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | )　CASE NO.3:20-CV-00848<br>)<br>)<br>)　MAGISTRATE JUDGE<br>)　WILLIAM H. BAUGHMAN, JR.<br>)<br>)　MEMORANDUM OPINION AND<br>)　ORDER<br>)<br>) |

**Introduction**

Before me[1] is an action under 42 U.S.C. § 405(g) by Amanda J. Taczak[2] seeking judicial review of the 2019 decision of the Commissioner of Social Security[3] that denied Taczak's 2013 applications for disability insurance and supplemental security income. The Commissioner has answered[4] and filed the transcript of the administrative proceedings.[5]

---

[1] The parties consented to my exercise of jurisdiction (ECF No. 11) and the matter was then transferred to me by United States District Judge Jack Zouhary (ECF No. 12).
[2] ECF No. 1.
[3] ECF No. 15, Transcript at 29.
[4] ECF No. 14.
[5] ECF No. 15.

1

Pursuant to my initial order[6] and procedural order,[7] the parties have briefed their positions,[8] filed supporting fact sheets and charts,[9] and met and conferred with the goal of reducing or clarifying the issues.[10] The parties participated in a telephonic oral argument.[11]

For the following reasons, the decision of the Commissioner will be affirmed.

## Decision of the ALJ

As Taczak herself states in her brief, "[t]he issues raised herein are narrow and specific to the findings and conclusions drawn [by the ALJ]. A summary of the medical evidence of record is not necessary …. Instead, a more detailed than usual overview of the administrative record is [required to set out the relevant issues]."[12]

That said, the record consists of a 2011 denial of benefits that preceded the present application, which application was followed by a 2014 denial of benefits that was in turn remanded by the Appeals Council for a 2018 hearing that produced the current 2019 decision that is at issue here.

In that decision, the ALJ found that Taczak, who was 38 years old at the time of the 2018 hearing,[13] had the following severe impairments: post-traumatic migraines with

---

[6] ECF No. 5.
[7] ECF No. 16.
[8] ECF Nos. 19 (Taczak brief), 23 (Commissioner brief), 24 (Taczak reply).
[9] ECF Nos. 20 (Taczak fact sheet), 23, Attachment 1 (Commissioner fact chart).
[10] ECF No. 25.
[11] ECF No. 27.
[12] ECF No. 19 at 5.
[13] Tr. at 44.

2

cervicalgia and neuritis, a history of hypothyroid, fibromyalgia, anxiety, and depression.[14] Further, Taczak was found to have the following non-severe impairments: gastric issues including constipation, rectal bleeding and hemorrhoids, tachycardia, and lumbar radiculopathy.[15]

The ALJ then determined that none of the severe impairments met or equaled a listing.[16] In particular, the ALJ found, under the paragraph B criteria for Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders) that Taczak has moderate limitations in the areas of interacting with others and concentrating, persisting and maintaining pace, with no limitation in the areas of understanding, remembering or applying information and in adapting and managing herself.[17]

Based on the record, the ALJ found that Taczak has the residual functional capacity (RFC) to perform light work, except that she cannot climb ladders, ropes or scaffolds, can perform only occasional overhead reaching with her right upper extremity, and must avoid dangerous machinery and unprotected elevations. Moreover, she is capable of performing work involving simple, routine, repetitive tasks that do not require assembly line

---

[14] *Id*. at 33.
[15] *Id.*
[16] *Id*. at 33-34.
[17] *Id*. at 35-36.

production and involve only occasional contact with the public, co-workers and supervisors.[18]

In arriving at this RFC, the ALJ gave little, partial or no weight to seven medical opinions from 2013, 2014 and 2018.[19] But the ALJ gave great weight to the eight-page November 1, 2018 opinion[20] of psychological consulting examiner Dr. Brian Griffiths, Psy. D.[21] With the assistance of testimony from a vocational expert, the ALJ concluded that Taczak could perform the tasks of three occupations – laundry folder, hand washer, and sorter – and that sufficient jobs exist in the national economy in these three occupations.[22]

Thus, Taczak was found not disabled.[23]

**Issues on Judicial Review**

Taczak raises the following three issues for judicial review:

    1.    The ALJ's failure to offer or hold a supplemental hearing after requiring Claimant to undergo post-hearing consultative examinations is in direct violation of agency policy as set forth in Hallex I-2-7-1.[24]

    2.    The ALJ's failure to include borderline intellectual functioning as a severe impairment is not supported by substantial evidence.[25]

    3.    The failures to find borderline intellectual functioning as a severe impairment, and to fully consider the findings of the post-hearing psychological consultative examination, resulted in the ALJ posing hypothetical questions which

---

[18] *Id*. at 37.
[19] *Id*. at 42-43.
[20] *Id*. at 1443-51.
[21] *Id*. at 43-44.
[22] *Id*. at 44-45.
[23] *Id.*
[24] ECF No. 19 at 14-15.
[25] *Id*. at 15-18.

did not incorporate all the limitations supported by the medical evidence of record. Consequently, the Step Five findings are not supported by substantial evidence.[26]

## Analysis

### A. The Standard of Review

This matter is considered under the well-established substantial evidence rule, which need not here be expounded. In addition, analysis of medical opinions is under the previous rules as to assignment of weight and articulation, which are also well-known.

### B. Application of Standards

The crucial issue here concerns how Dr. Griffiths 'finding of borderline intellectual functioning from the post-hearing mental examination was analyzed and used by the ALJ.

The first issue – Taczak's claim that the ALJ violated agency rules by ordering a post-hearing consultative examination but then did not offer Taczak a supplemental hearing – is resolved against Taczak on the record. In a post-examination letter to Taczak, which is part of the record here, the ALJ informed Taczak that the result of the examination with Dr. Griffiths would be placed into evidence and further told Taczak that she could request

---

[26] *Id*. at 19-21.

a supplemental hearing.[27] Thus, contrary to the first claim, there was no violation of agency regulations in this regard.[28]

As to the next issue, a failure to find that an impairment is "severe" at Step Two is "legally irrelevant," given that, having found some other impairments to be severe, the ALJ is then required to consider all impairments in the later steps of the process.[29] Magistrate Judge Limbert considered a very similar claim arising under very similar circumstances in *Wilder v. Berryhill*.[30] Magistrate Judge Limbert began by re-stating the rule that the Step Two severity regulation is a "*de minimus* hurdle" in the disability determination process.[31] On that basis, he "questioned" the ALJ's finding that the claimant's recognized mental limitations did not cause more than minimal limitations on the claimant's ability to perform work.[32] That said, however, Magistrate Judge Limbert concluded that any failure at Step Two to find an impairment was severe was legally irrelevant because, in the course of the analysis, the ALJ considered, as here, the "paragraph B" criteria of the applicable listings

---

[27] Tr. at 616.
[28] I note further that Taczak did not return to this issue in her reply brief. See, ECF No. 19. Failure to mention a disputed issue in the reply brief leads the reviewing court to conclude that the issue has been abandoned. *Duggan v. Village of New Albany,* 2009 WL 650461, at *1 (S.D. Ohio March 11, 2009).
[29] *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008).
[30] *Wilder v. Berryhill*, 2019 WL 1428215 (N.D. Ohio March 29, 2019).
[31] *Id*. at *4.
[32] *Id*. at *5.

and concluded that the claimant did not meet the relevant listings,[33] as well as addressed any purported limitations at Step Four when evaluating the medical opinions.[34]

I am aware that Taczak argues that the failure to identify borderline intellectual functioning as a severe impairment meant, *inter alia*, that the ALJ never conducted an analysis at Step Three as to whether her borderline intellectual functioning met Listing 12.05.[35] That said, I observe that the "paragraph B" criteria of Listings 12.04, 12.05 and 12.06 are identical[36] and the ALJ did analyze whether Taczak met Listings 12.04 and 12.06, concluding that she did not. As the Sixth Circuit has stated, "even where a finding of borderline intellectual functioning exists, that finding alone does not raise a substantial question as to whether the claimant meets the diagnostic definition of Listing 12.05."[37]

Taczak's next argument is that the ALJ did not truly consider all of her non-severe impairments in arriving at the RFC.[38] In particular, she contends that simply using boilerplate language to the effect that the entire record was considered cannot overcome the fact that the ALJ did not clearly state the reasons why Dr. Griffith's were neither

---

[33] *Id.*
[34] *Id.*
[35] ECF No. 24 at 3.
[36] *Thornton v. Saul*, 2021 WL 3934332, at *12 (N.D. Ohio June 21, 2021), R&R adopted, 2021 WL 4025192 (N.D. Ohio Sept. 2, 2021) (paragraph B criteria identical in Listings 12.02, 12.04, 12.05); *Gushen v. Commissioner*, 2017 WL 1807605, at *5 (E.D. Mich. Feb. 23, 2017) (paragraph B criteria identical in Listings 12.04 and 12.06). The paragraph B criteria of Listings 12.02 and 12.04 appear as paragraph D of Listing 12.05. *Baily v. Comm'r*, 2013 WL 6835292, at *5 (S.D. Ohio Dec. 26, 2013).
[37] *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 434 (6th Cir. 2014) (internal citation omitted).
[38] ECF No. 24 at 4-5.

7

accepted in full nor why some portions of his findings were rejected.[39] Dr. Griffith was not a treating physician, but a consultative examiner. As such, there was no presumptive controlling weight attached to his opinion and so the specific "good reasons" articulation requirement applicable to treating source opinions given less than controlling weight[40] (which was cited by Taczak)[41] is not directly applicable in the same way here.[42] Rather, as the district court noted in *Ross v. Saul*,[43] " the decision under review still serves the purpose of letting claimants understand the disposition of their cases."[44] Specifically, the ALJ here pointed to Taczak's work history cited by Dr. Griffith, the fact that her mental status examinations are generally normal and that her other mental health conditions are managed by medication without the need for formal mental health care, and that Taczak was able to complete the majority of tasks assigned to her.[45]

Further, Taczak contends that the ALJ improperly used activities of daily living as reasons to downgrade medical opinions that she was more restricted in her capacity for work.[46] In fact, the RFC was based on an October 2018 internal medicine consultative report that made specific exertional findings, to which the ALJ gave partial weight because

---

[39] *Id*. at 5.
[40] *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).
[41] ECF No. 24 at 5.
[42] ALJ is only required to give good reasons for giving greater weight to the opinion of a non-treating source. *Helm v. Comm'r of Soc. Sec.,* 405 Fed. Appx. 997, 1002 (6th Cir. 2011).
[43] 2020 WL 9634160 (E.D. Ky. Dec. 22, 2020).
[44] *Id*. at *7.
[45] Tr. at 43-44.
[46] ECF No. 24 at 6.

those findings required even further limitations based on the August 2018 report of Taczak's treating source.[47] While it is true that the report of CNP Ebersole, the treating provider, was itself given little weight due to a lack of supporting specific functional assessments, the treating source opinion was considered and cited as a reason for increasing the RFC limitations.[48] Thus, given this on the record analysis, it is incorrect to claim, as Taczak does, that her activities of daily living, while cited and described, were the reason why any medical opinion was downgraded.

Finally, Taczak maintains that the ALJ erred by not treating the mental limitations in the 2011 RFC as *res judicata*.[49] The Commissioner contends that the ALJ here gave a permissible "fresh look" at the application and the evidence to arrive at the current RFC.[50] I note first that, while the parties here argue over whether the evidence in the current case is – and was identified as - "new and material" mental health evidence, there is no question that Dr. Griffith's 2018 psychological evaluation went to the broad issues of Taczak's mental and emotional status, and was considered here, being given great weight.[51] There is also no question, as discussed above, that Dr. Griffith's opinion, as modified by other new evidence from the 2018 internal medicine consultative examination and the 2018 opinion of the treating source, formed the basis for the current RFC. In such a situation, I find no error by the ALJ in formulating a new RFC.

---

[47] Tr. at 43.
[48] *Id.*
[49] ECF No. 24 at 8-9.
[50] ECF No. 23 at 6-7.
[51] Tr. at 43-44.

In light of the above, I further find that substantial evidence supports the decision of the ALJ. In that regard, I observe, as does the Commissioner,[52] that Taczak raised no issues as to the weight assigned to the various opinions which, as detailed above, are then analyzed and explained in arriving at the RFC.

## Conclusion

For the reasons stated, the decision of the Commissioner denying Amanda Taczak's application for benefits is hereby affirmed.

IT IS SO ORDERED.

Dated: September 28, 2021  s/William H. Baughman Jr.
United States Magistrate Judge

---

[52] ECF No. 23 at 9.